James R. Creel, J.
It is the present changing and developing state of the law herein involved which makes this case worthy of comment. The People proved beyond a doubt that the three male defendants did “strike, beat, wound and ill-treat” the young female complainant, and did ‘ ‘ threaten to do corporal harm to her, to harm her and her family,” as charged in the information. In the testimony there were strong intimations that more than the charged assaults had occurred — that some of the bruising, beatings and the threats had taken place subsequent to a series of consummated but uncorroborated rapes.
Throughout the trial of this assault information the anomalous spectacle was presented of all defense counsel insisting upon their right to introduce evidence that each of their clients had *722 been arrested and originally charged With forcible rape, sad that the hearing had developed tittcorrohorated testimony of more than one act of forcibly consummated rape. The anomaly was heightened by the prosecution’s objections to the introduction of such evidence. Finally, and only after each defense counsel stated upon the record that exclusion, of such proffered proof denied their clients their legal right of defense, was there received into evidence the record of the preliminary hearing, which did indeed establish that each of the defendants had been arrested and charged with forcible rape, that there was uncorroborated testimony of a series of Consummated acts of rape, aild that the hearing' Judge had directed, and the District Attorney complying, had dismissed the rape charges and filed the two-count assault information herein.
The anomaly was then completed by the defense counsel interposing a legal defense based upon the comparatively recent, cases of People f. Lo Verde (7 N Y 2d 114); People v. English (16 N Y 2d 719); People v. Colon (16 N Y 2d 988) and People v. Sigismondi (49 Misc 2d 1), which cases do indeed support the legal proposition that if the defendants' had originally been charged with rape as well as assault with intent to rape or attempted rape and there had been uncorroborated testimony of-acts of consummated rape, that as a matter of established law they could not be convicted of the accompanying charge’ Of assault. This apparently is the present State of law hi this State as Judge J. Irwin Shapiro has most cogently and sharply demonstrated in his very recent opinion in People v. Sigismondi (supra), in which he has most pointedly suggested that high appellate reconsideration suggests itself. And after the anomalies in this trial we most deferentially concur in Judge Shapiro’s suggestion as to appellate review in the present case.
But it may well be questioned as to whether such appeals based upon the bare records on appeal of such cases would sufficiently inform such high courts, already sharply and articulately divided, so as to assuage the majorities’ expressed total mistrust of the testimony of vindictive scorned women or the imaginative whimsies of molested minor children? Are the judicial processes, confined and limited as they are to the printed record on appeal and the relevant facts' of the particular case, suitable to sufficiently inform of all that should be considered in the formulation of “rule of corroboration ” or the ground rules governing trials in this small but complex and highly important area of human rights? It may well he that this is another judicially created anomalous confusion in the law which
*723 must, for solution, be referred to the American Law Institute or some special commission of the State or the American Bar Association for intensive consideration by the thus mobilized scholarship of the entire legal profession, and the formulation of a statute, code or comprehensive rule for legislative consideration and enactment.*
In failing to apply the rule of law urged by defense counsel, and in convicting each of the three defendants of each of the two counts of the information, we point out that the assaults of which the defendants have been found guilty, both the bruising, beatings and the threats, were subsequent to the uncorroborated acts of rape; were independent of and not in furtherance of the alleged consummations of the uncorroborated rapes; and were in nowise connected with the alleged rapes except possibly as an attempt to silence the already ravished victim. Furthermore, we believe that the statutes which charge the District Attorney with the responsibility for law enforcement in the county which has elected him to that office inherently empower that public official with the duty and the authority to conform *724 his indictments, informations and complaints to available legally competent proof. Finally, we doubt the law permits defense counsel to inject prejudicial and irrelevant matter into a record and then to take advantage thereof. Each of the defendants is found guilty of each of the charges in the information.
Ryan and Skodnick, JJ., concur.

 It is noted by the writer that this is but one area in the criminal law which is currently undergoing change, growth and new development. After generations of little short of neglect of the whole field of the criminal law by all departments of government and the scholarship of the legal profession, there has recently been a resurgence of much needed and constructive interest in finding a more perfect criminal law and administration. It is a series of opinions by high appellate courts which has not only directed attention but made a piecemeal beginning on the much needed change and improvement. What is probably needed is a new and modern code of criminal procedure. As indicated above, it may well be doubted that the judicial process, and its ease-by-case piecemeal method is the best means of formulating codes of criminal procedure or any legislative enactment or any such extensive change and modernization of a long-neglected field of law. It is suggested that executive commissions and/or the legislative process are more appropriate methods of formulating such codes and changes. There are sound reasons why the judiciary should exercise great restraint, in other than directing attention to the need for change and action. If the judiciary were to make it a practice to do more and to assume to formulate matters of policy and hand down judicial legislative codes and changes of basic law, would it not only undermine the constitutional divisions of power but also change the dream of the rule of law into the ashes of a rule by courts and a possible tyranny of Judges?
The writer would also note that Judges have been the most horrendous of legislators; and will continue to be just that until such time as the judicial process may be expanded to adequately inform the judiciary of not only that which is relevant to the particular case to be decided, but also all that which should be considered to have a bearing upon the whole complex and many sided problem or relationship which their judicial opinion will attempt to resolve or regulate. And until such time as the judicial process is so expanded, is not the greatest of judicial restraint in legislation indicated?